## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CASE NO.:

| | |
|---|---|
| BRIDGECREST ACCEPTANCE CORPORATION, an Arizona Corporation, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) | Jury Trial __ Yes __ No |
| RICHARD SADDLER, an individual, ) ) ) | |
| Defendant, ) ) ) | |
| and ) ) ) | |
| RICHARD SADDLER, an Individual, ) ) ) | |
| Third Party Plaintiff, ) ) ) | |
| v. ) ) ) | |
| CARVANA, LLC, a Delaware Limited Liability Company, and ) ) ) ) | |
| SILVERROCK GROUP INC., an Arizona Corporation, and ) ) ) ) | |
| DRIVE TIME AUTOMOTIVE GROUP, INC., an Arizona Corporation, ) ) ) ) ) | |
| Third Party Defendant(s). ) | |

## ANSWER TO PLAINTIFF'S PETITION AND DEFENDANT/THIRD PARTY PLAINTIFF'S COUNTER COMPLAINT

### ANSWER

COMES NOW the Defendant, RICHARD SADDLER, and files this Answer to Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION'S Petition and states as follows:

1, As to paragraphs 1, 2, 3, 4, and 5, Denied.

### COUNTER COMPLAINT

Defendant, RICHARD SADDLER, pro se, being duly sworn and complaining against Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION; and Third Party Plaintiff, RICHARD SADDLER, against Third Party Defendants, CARVANA LLC, SILVERROCK GROUP INC, and DRIVE TIME AUTOMOTIVE GROUP INC and Deposes and states that:

### GENERAL ALLEGATIONS

1. Defendant and Third Party Plaintiff, RICHARD SADDLER, claims federal jurisdiction pursuant to Article III § 2 which extends jurisdiction to cases arising under the U.S. Constitution.

2. Defendant and Third Party Plaintiff, RICHARD SADDLER seeks damages in excess of $75,000, exclusive of costs and fees.

3. Defendant and Third Party Plaintiff, RICHARD SADDLER, ("Saddler") is an individual with a mailing address of 413 Genoa Drive, Manchester, MO 63021.

4. Plaintiff, BRIDGECREST ACCEPTANCE CORPORATION, ("Bridgecrest") is a corporation organized under the laws of the State of Arizona.

5. Third Party Defendant SILVERROCK GROUP INC, ("SilverRock") is a corporation organized under the laws of the State of Arizona.

6. Third Party Defendant CARVANA, LLC is a limited liability company organized under the laws of the State of Delaware.

7. Third Party Defendant, DRIVE TIME AUTOMOTIVE GROUP INC, ("Drive Time") is a corporation organized under the laws of the State of Arizona.

8. Drive Time is the parent company and has spun off Carvana, SilverRock, and Bridgecrest.

9. Drive Time is a private company that is owned by Ernest Garcia II.

10. Ernest Garcia II was a player in the savings and loan crisis in the late 1980s and he pled guilty to a felony fraud charge in 1990, so therefore he is unable to be a CEO of a publicly traded corporation.

11. Carvana was founded in 2012 by Ernest Garcia III, Ryan Keeton, and Ben Huston. Carvana went public on April 28, 2017, its shares ended that day at $11.10. On January 24, 2020, Carvana shares were $83.11, with highest value being $99.19 in December 2019.

12. Bloomberg reported that Ernest Garcia II's felony conviction was not disclosed in Carvana's Security and Exchange Commission filings according to an article in Forbes

13. The two largest shareholders of Carvana are Ernest Garcia II and Ernest Garcia III, who combined own a super majority of Carvana shares which provides them with controlling voting rights.

14. On or about November 19th, 2014, the Consumer Financial Protection Bureau ("CFPB") took action against a "buy here, pay here" car dealer named Drive Time and fined them a civil money penalty of $8,000,000. (**Exhibit A**)

15. "The CFPB noted that 'at least 45 percent of Drive Time's auto installment contracts were delinquent at a given time'." (**Exhibit A**)

16. Shortly thereafter Drive Time spun off its' loan servicing division and renamed it Bridgecrest Acceptance Corporation in 2016.

17. To Saddler's belief and knowledge, Drive Time owns 100% of Bridgecrest and 100% of SilverRock.

18. To Saddler's belief and knowledge Bridgecrest is a finance company that exclusively services auto loan debt for Drive Time and its affinities.

19. To Saddler's belief and knowledge Carvana is a retailer of used motor vehicles that are obtained, in part, by and through Drive Time.

20. To Saddler's belief and knowledge SilverRock is a warranty company that is referred by Carvana to presumptive purchasers of used motor vehicles from Drive Time and or Carvana.

21. To Saddler's belief and knowledge, when a vehicle is purchased from Carvana, Carvana uses Bridgecrest to service the loans from Carvana's customers.

22. To Saddler's belief and knowledge, when a vehicle is purchased from Carvana, Carvana uses SilverRock to service and/or administer all warranties and/or GAP insurance for Carvana's customers.

23. Under the "umbrella" of the ownership and/or control of Drive Time, the purchase of a vehicle from Carvana by a consumer such as Saddler, is

then financed through Bridgecrest and the warranties are provided by SilverRock.

24. On April 15, 2021, Bridgecrest electronically filled a Petition in The Circuit Court of Saint Louis County, Missouri, Circuit Court Division in case number 21SL-CC01705. ("Petition")

25. In the Petition, Bridgecrest alleged that Bridgecrest and Saddler entered into a written contract, without any proof of said contract.

26. In an affidavit that was attached to the Petition, Bridgecrest swears that Bridgecrest is a third party servicer of accounts originated by Drive Time.

27. Saddler filed a prior suit against Carvana in The Circuit Court of Saint Louis Missouri – case number 19SL-CC05679 which Carvana removed to this Court in case number 4:20CV105 HEA.

28. In case number 4:20CV105 HEA, this Court issued an Order on August 11, 2020 which granted Carvana's Motion to Compel Arbitration and Dismissed case number 4:20CV105 HEA. Arbitration has just started.

29. Since August 11, 2020, additional facts have become known to Saddler and are alleged herein.

## STATEMENT OF THE FACTS

30. Desiring to purchase a used vehicle, Saddler utilized Carvana's website to search for and locate a suitable vehicle.

31. After locating a vehicle, Saddler applied for financing through Carvana's related party finance company, Bridgecrest.

32. Bridgecrest approved Saddler to finance $26,489.02 which included the price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, at an interest rate of 12.61%.

33. Vehicle protection and GAP coverage was administered by SilverRock at Carvana's direction and control.

34. On or about September 21, 2018, Carvana delivered a 2015 GMC Terrain Denali "(Denali)" the second of two automobiles to Saddler at his residence in St. Louis County, Missouri and upon delivery Saddler executed final documents acknowledging and accepting delivery.

35. These documents included a retail installment contract and security agreement, Carvana Care agreement, credit reporting notice, odometer disclosure statement, and a GAP Addendum to retail installment contract.

36. On the first page of the buyer's guide that was provided to Saddler at the time of purchase it states a service contract is available at an additional charge. (**Exhibit B**)

37. In the Gap Addendum to Retail Installment Contract, the creditor is listed as Carvana with a Tempe Arizona address. SilverRock is listed as the administrator of the Gap addendum. (**Exhibit C**)

38. In the Retail Installment Contract and Security Agreement, Carvana LLC of Winder Georgia is listed as the Seller. (**Exhibit D**)

39. The Retail Installment Contract provides a security interest to Carvana LLC of Winder Georgia. (**Exhibit D**)

40. Pursuant to the Retail Installment Contract, Carvana is both the Seller and the Lender for the vehicle purchased by Saddler.

41. Neither at the time of sale or delivery of the purchased vehicle nor any time subsequent did Carvana provide Saddler title or an assignment of a Certificate of Ownership to the purchased vehicle as required by Missouri law and/or by Georgia law.

42. Approximately forty-five days after his purchase, and prior to the expiration of the temporary registration tags, Saddler was required to obtain at his expense and inconvenience the first of what would turn into several emissions inspections with odometer readings. Carvana told Saddler that he needed to take these actions and email the emissions test results to Carvana ostensibly so that Carvana could provide Saddler his vehicle title or an assignment of a Certificate of Ownership and registered license plates. Carvana told Saddler that Carvana would cover the expense of obtaining his emissions test.

43. Saddler repeatedly requested that Carvana sign over said title, placing Bridgecrest as lienholder.

44. Despite providing a passing emissions test result via FedEx and email as directed by Carvana, Saddler was informed that Carvana's processing company, was unable to process the title and registration and requested original emission inspection and odometer readings issued by the State of Missouri and not the "copy" provided by mail or email.

45. Saddler repeatedly requested the title and registration for the vehicle he purchased.

46. The Retail Installment Contract and Security Agreement required Saddler to pay a license and title fee. (**Exhibit D**)

47. Saddler was making all required payments to Bridgecrest even though he was having ownership registration problems.

48. In April 2018 Saddler began receiving emails from Carvana and Bridgecrest threatening repossession of the vehicle Plaintiff purchased to cover-up there behavior (**Exhibit E**).

49. In April Carvana then began to create additional items needed unrelated to emissions (**Exhibit F**), but Saddler complied immediately.

50. As a further consequence of Saddler's registration problems, he has been stopped repeatedly by police for driving without properly registered

license plates.  Saddler feels fearful for his and his family's safety because of potential ramifications from having to confront a hostile police officer due to unregistered license plates.

51. Beginning in approximately September 2018 until approximately September 2019, Saddler made all monthly payments to Bridgecrest in the amount of $527.00.

52. On October 14, 2019, Saddler made a payment to Bridgecrest which Bridgecrest stated made his account with them current (**Exhibit G**), Saddler has in his passion the recorded call from Bridgecrest/Plaintiff.

53. Saddler made his next payment to Bridgecrest on or before November 26, 2019 which was the due date for said payment.

54. Bridgecrest refused to accept and/or returned all payments made after October 14, 2019 and continues to do so.

55. SilverRock informed Saddler that they would no longer honor the service agreement because Carvana allegedly cancelled the service agreement.

56. Saddler has additionally suffered loss of time, inconvenience, annoyance, and embarrassment resulting from his vehicle purchase and Carvana's failure to assign Saddler a Certificate of Ownership or title pursuant thereto and by Carvana's further and ongoing failure to remedy their omission of failing to assign him a Certificate of Ownership.

57. Saddler has also incurred thousands of dollars in rental car expenses due to alleged conduct referenced here in.

58. The allegations contained herein establish that Drive Time asserted control over Carvana, Bridgecrest, and SilverRock.

59. The actions of Carvana, Bridgecrest, SilverRock and Drive Time as described herein, were outrageous because of their combined conscious disregard of their contractual and statutory obligations or otherwise reckless indifference to Saddler's rights.

60. In the General Court of Justice Superior Court Division of Wake County, North Carolina, file number 21 CVS 8116, Carvana entered into a settlement agreement where their retail license to sell automobiles in the state of North Carolina was suspended for 180 days effective on August 2, 2021. (**Exhibit H**) This settlement agreement was in part due to Carvana's failure to timely deliver title work, which is similar to the facts alleged above by Saddler.

## COUNT I – BREACH OF CONTRACT

## AS TO CARVANA, BRIDGECREST, AND SILVERROCK

61. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

62. On or around September 21, 2018, Saddler entered into a contract ("Contract") with Carvana for the purchase of a used vehicle. *See* Contract marked (**Exhibit I**), attached hereto and incorporated herein by reference. The Contract was executed in St. Louis County Missouri. The Contract names Carvana as "Dealer" for the sale of the subject vehicle.

63. In addition, on or around September 21, 2018, Saddler entered into a Retail Installment Contract and Security Agreement, ("Finance Agreement" or Exhibit D) with Bridgecrest for the financing of the Denali.

64. Further, on or around September 21, 2018, Saddler entered into a Warranty Agreement with SilverRock, (**Exhibit J**).

65. The Contract and Missouri State law (*R.S.Mo.§ 301.210)* required Carvana, among other things, to provide Saddler with title to the vehicle by assigning him a Certificate of Ownership upon performance by Carvana of his contractual obligations.

66. Saddler was never provided a Certificate of Ownership by Carvana at the time of vehicle delivery as required by Missouri law and which is necessary to register his purchased vehicle and/or within the time period as required by laws of the State of Georgia.

67. Saddler never received any evidence of proof of title to the Denali; therefore Bridgecrest could not attach any security interest to the Denali.

68. Saddler performed fully in accordance with the Contract paying Bridgecrest each and every payment in the correct amount as it became due until approx. September 2019.

69. Carvana's failure to provide Saddler documents necessary to register his purchased vehicle constitutes not only a breach of the Contract itself but also a breach of the implied covenant of good faith and fair dealing imposed upon every contract in Missouri.

70. Carvana's failure to provide Bridgecrest with any proof of ownership and/or title to the Denali requires the Finance Agreement and Warranty to have no legal effect.

71. As a result of the foregoing breaches of Contract, all Defendants have caused Saddler to suffer financial damages.

72. Accordingly, Saddler is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

## COUNT II – STATUTORY FRAUD

## AS TO CARVANA

73. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

74. *R.S.Mo. § 301.210* provides any sale of a motor vehicle without transfer of title is fraudulent.

75. Carvana sold, or purportedly sold, a vehicle to Saddler without transferring title of the vehicle by assignment of a Certificate of Ownership as required by Missouri statute *R.S.Mo. § 301.210* and, as such, the sale was fraudulent and void as a matter of law.

76. Carvana was repeatedly put on notice by Saddler, in addition to being notified by the Missouri State Attorney General, of the fraudulent nature of the vehicle sale.

77. Despite being aware of their failure to transfer title by assignment of a Certificate of Ownership and by thereafter refusing to remedy same, Carvana has caused Saddler to suffer financial damages.

78. Accordingly, Saddler is entitled to an award of compensatory damages in an amount to be determined at trial, as well as an award of punitive damages and attorney fees, costs, and pre- and post-judgment interest.

**COUNT III – FEDERAL FRAUD IN THE INDUCEMENT RULE 9(b) AS TO CARVANA, BRIDGECREST AND SILVERROCK**

79. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

80. Carvana, and/or Bridgecrest, and/or SilverRock made fraudulent statements to Saddler during the course of negotiations for the Denali that Saddler would obtain title to the Denali and that the Denali would be financed and covered by specific warranties.

81. These statements by Carvana, and/or Bridgecrest, and/or SilverRock were fraudulent because at the time made, Carvana, and/or Bridgecrest, and/or SilverRock knew that Carvana did not have title to the Denali at the time of sale.

## COUNT IV – CIVIL REMEDIES, ATTORNEY'S FEES AND PUNITIVE DAMAGES – VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") - R.S. Mo. §§ 407.020 and 407.025 AS TO CARVANA, BRIDGECREST AND SILVERROCK

82. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

83. As herein alleged Carvana used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omissions of material fact in connection with the sale of the Denali to Saddler, to wit: Carvana misrepresented to

Saddler that Carvana was prepared to assign a Certificate of Ownership upon Saddler's performance under the contract; Carvana misrepresented to Saddler that Carvana would obtain an ownership interest in the Denali if he performed as required under the contract but despite Plaintiff's performance he has acquired no interests whatsoever in the Denali; and Carvana, and/or Bridgecrest, and/or SilverRock charged Saddler excessive fees for services and products of little or no value.

84. Saddler's purchase of the Denali from Carvana was made primarily for personal, family or household purposes.

85. Saddler purchased the Denali for personal, family or household purposes and suffered an ascertainable loss of money or property as a result of the use or employment by Carvana of methods, acts or practices declared unlawful by R.S. Mo. § 407.020.

86. Saddler has been damaged by Carvana, and/or Bridgecrest, and/or SilverRock actions in an amount to be proven at trial for which he claims compensatory damages against Defendant.

87. Carvana, and/or Bridgecrest, and/or SilverRock conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Saddler's rights.

88. Saddler is entitled to an award of punitive damages in an amount no less than $2,500.00 and reasonable attorney's fees and expenses of this litigation, and interest against Carvana, and/or Bridgecrest, and/or SilverRock.

89. Saddler is entitled to such other and further relief as may be warranted.

## COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## AS TO DRIVE TIME. CARVANA, BRIDGECREST AND SILVERROCK

90. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

91. Carvana represented to Saddler they were able to legally sell the Denali to Saddler.

92. Despite Saddler performing as required under the contract, Carvana failed to perform as required by law and as set forth *supra* by delivering the Denali without providing Saddler an assignment of a Certificate of Ownership.

93. Carvana is a sophisticated and experienced nationwide and also a licensed Missouri auto dealership with resources enabling it to be fully knowledgeable regarding their responsibility to assign a Certificate of Ownership at the time of delivery in Missouri of any automobile sold.

94. This is especially true due to Carvana being a subsidiary of Drive Time.

95. Despite Carvana's knowledge as imputed by and through Drive Time, of their legal duty to assign ownership at the time of delivery, Carvana shifted its statutory burden to provide an assignment of ownership to Saddler by requiring him to obtain his own emissions certification prior to Carvana assigning Saddler his Certificate of Ownership.

96. As a result of Carvana shifting its statutory responsibility to Saddler by failing to assign a Certificate of Ownership and thereafter insisting Saddler obtain his own emissions certification prior to Carvana's assignment, Saddler has been denied the benefit of his bargained for exchange as represented by the parties' contract because he has no ownership interest in the Denali after more than a year of monthly payments.

97. As a direct result of Carvana's breach of the covenant of good faith and fair dealing, Saddler has, or will, sustain damages in an amount to be proven at trial.

## COUNT VI – CONSTRUCTIVE FRAUD OR NEGLIGENT MISREPRESENTATION
### AS TO CARVANA

98. Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

99. Carvana in the course of their business as a Missouri licensed used auto dealership, for Carvana's pecuniary gain, supplied false information to Saddler intended for their specific guidance in their consideration of the purchase of the Denali all as herein alleged, upon which Saddler reasonably relied to his detriment in entering into the purchase of the Denali.

100.   In furnishing such false information Carvana failed to exercise reasonable care or competence in obtaining or communicating such information to Saddler.

101.   As a direct and proximate result of Carvana's negligent misrepresentations, Saddler has suffered, and will continue to suffer damages, including pecuniary losses in an amount to be determined at trial.

102.   Saddler has been damaged by Carvana's actions for which he claims compensatory damages against Carvana.

## COUNT VII – UNJUST ENRICHMENT
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

103.   Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

104.   Carvana, and/or Bridgecrest, and/or SilverRock have knowingly benefited at Plaintiff's expense by reason of their receipt of monthly payments with interest and fees made toward the purchase price for the Denali.

105.   Allowing Carvana, and/or Bridgecrest, and/or SilverRock to retain such benefit without assignment to Saddler of a Certificate of Ownership and a judgement for his damages would be unjust under the circumstances.

106.   Carvana, and/or Bridgecrest, and/or SilverRock's conduct was malicious, fraudulent, oppressive and/or recklessly committed with wanton disregard of Saddler's rights.

107.   Saddler has been damaged by Carvana, and/or Bridgecrest, and/or SilverRock's actions in an amount to be proven at trial and he hereby tenders the return of the Denali for which he claims compensatory and punitive damages against Carvana, and/or Bridgecrest, and/or SilverRock.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

108.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

109.    Carvana, and/or Bridgecrest, and/or SilverRock's actions were the direct and proximate cause of emotional distress suffered by Saddler.

110.    Carvana, and/or Bridgecrest, and/or SilverRock's had a duty to avoid engaging in conduct and/or actions and/or omissions that would unnecessarily and unjustifiably cause emotional stress to Saddler.

111.    Carvana, and/or Bridgecrest, and/or SilverRock breached their duty.

112.    Carvana, and/or Bridgecrest, and/or SilverRock was negligent in causing Saddler's emotional distress in that Carvana, and/or Bridgecrest, and/or SilverRock's realized or should have realized with the foresight exercised by a reasonable person that their conduct and/or actions and/or omissions involved an unreasonable risk of causing Saddler emotional distress.

113.    Furthermore, the actions of Carvana, and/or Bridgecrest, and/or SilverRock's are outrageous and evidence a complete indifference and conscious disregard for the rights of others, Saddler is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.  for the first count for Breach of Contract, an award of
compensatory damages and punitive damages in an amount to be
determined at trial and an Order for specific performance of the
Contract requiring Defendant assign to Plaintiff a Certificate of
Ownership or in the alternative rescission of the contract and an
award of damages; OR

b.  for the second count for Statutory Fraud, an award of
compensatory damages and punitive damages in an amount to be
determined at trial and an Order for specific performance of the
Contract requiring Defendant assign to Plaintiff a Certificate of
Ownership or in the alternative rescission of the contract and an
award of damages; OR in lieu of "a" or "b"

c.  for the third count for Federal Fraud, an award of compensatory
damages and punitive damages in an amount to be determined at
trial and an Order for specific performance of the Contract
requiring Defendant assign to Plaintiff a Certificate of Ownership;
OR in lieu of "a", "b" or "c"

d.  for the fourth count for Violation of the MPA, an award of
compensatory damages and punitive damages in an amount to be
determined at trial and an Order for specific performance of the
Contract requiring Defendant assign to Plaintiff a Certificate of
Ownership or in the alternative rescission of the contract and an
award of damages; OR in lieu of "a," "b", "c" or "d"

e.  for the fifth count for Breach of the Covenant of Good Faith and
Fair Dealing, an award of compensatory damages and punitive
damages in an amount to be determined at trial and an Order for
specific performance of the Contract requiring Defendant assign to
Plaintiff a Certificate of Ownership or in the alternative rescission
of the contract and an award of damages; OR in lieu of "a," "b,"
"c", "d" or "e"

f.  for the sixth count for Constructive Fraud/Negligent
Misrepresentation, an award of compensatory damages and
punitive damages in an amount to be determined at trial and an

Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages;  OR in lieu of "a," "b," "c," "d", "e" or "f"

g.  for the seventh count for Unjust Enrichment, an award of compensatory damages in an amount of at least $75,000 as determined at trial; AND

h.  for the eighth count for Negligent Infliction of Emotional Distress, an award of compensatory damages and punitive damages in an amount to be determined at trial; AND

i.  an award of costs, attorney's fees, and pre- and post-judgment interest; AND

j.  all other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully submitted,

Richard Saddler
Plaintiff, *Pro Se*
*413 Genoa Drive*
*Manchester, MO 63021*
*Cell: 310-428-2110*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Process Server and or emailed, and or certified US Postal Service to the registered agents or Representatives listed below on this 1st day of September 2021.

_____

RICHARD SADDLER

RECIPIENTS SERVED ARE AS FOLLOWS:
**Plaintiff:** BRIDGECREST ACCEPTANCE CORPORATION,
Attention; attorney Scott Rabin, 15280 Metcalf Ave, Overland Park, KS 66223

**Third Party Defendant:** CARVANA, LLC,
Attention; attorney Tom McFarland (tmcfarland@gsrm.com)

**Third Party Defendant:** DRIVETIME AUTOMOTIVE GROUP INC,
Certified mail to: 8825 N 23rd AVE, Suite 100, Phoenix, AZ 85021

**Third Party Defendant:** SILVERROCK GROUP INC,
Certified mail to: 7465 East Hampton Ave, Mesa, AZ 85209