**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **BRIDGECREST ACCEPTANCE** | § | |
| **CORPORATION, an Arizona** | § | |
| **Corporation,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RICHARD SADDLER, an individual,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| **and** | § | **Case No. 4:21-cv-01096-JCH** |
| | § | |
| **RICHARD SADDLER, an individual,** | § | |
| | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CARVANA, LLC, a Delaware Limited** | § | |
| **Liability Company, and** | § | |
| | § | |
| **SILVERROCK GROUP, INC., an** | § | |
| **Arizona Corporation, and** | § | |
| | § | |
| **DRIVE TIME AUTOMOTIVE GROUP,** | § | |
| **INC., an Arizona Corporation,** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

---

<u>**DEFENDANT'S AMENDED ANSWER AND THIRD-PARTY COUNTER COMPLAINT**</u>

NOW COMES Defendant, Richard Saddler, representing himself as a Pro Se litigant,

hereby files this Amended Answer to Plaintiff, Bridgecrest Acceptance Corporation's Petition

and states as follows:

<u>**DEFENDANT/THIRD-PARTY PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO**
**AMEND ORIGINAL ANSWER AND COUNTER-COMPLAINT AND MEMORANDUM**</u> **– Page 1**

**I.**

## GENERAL DENIAL

1.      Subject to such stipulations and admissions as may hereafter be made, Defendant asserts a general denial as authorized under the rules.  Defendant respectfully requests that Plaintiff be required to prove the charges and allegations against this Defendant by a preponderance of the evidence as is required by the Constitution and laws of the State of Missouri.

2.      With respect to the prayer contained in Plaintiff's Petition, Defendant <u>denies</u> that any of the alleged acts or omissions and <u>denies</u> that Plaintiff is entitled to recover any damages or any other relief.

3.      Any and all allegations not specifically admitted above are generally denied.

**II.**

## SPECIFIC DENIAL

4.      Defendant admits paragraph ONE of Plaintiff's Petition that this Court has original jurisdiction to hear this matter.

5.      Defendant denies paragraph TWO of Plaintiff's Petition that Plaintiff and Defendant entered into a written contract.

6.      Defendant denies paragraph THREE of Plaintiff's Petition that Plaintiff performed as agreed.

7.      Defendant denies paragraph FOUR of Plaintiff's Petition that Defendant breached the contract.

8.      Defendant denies paragraph FIVE of Plaintiff's Petition.

## III.

## DEFENSES AND AFFIRMATIVE DEFENSES

9.      By pleading the following defenses, as provided for pursuant to Missouri Rules of Civil Procedure, Defendant does not concede that it possesses or assumes the burden to prove each or any of them. Instead, Defendant maintains that Plaintiff retains the burden of proof on all matters necessary to state and sustain the claims asserted in their Original Petition.

## IV.

## AFFIRMATIVE DEFENSES

10.      Plaintiff has failed to state a claim for which relief may be granted.

11.      Plaintiffs have failed to exhaust administrative remedies for some or all of their claims.

12.      Defendant denies Plaintiffs are entitled to recover any damages or other relief; in the alternative, upon information and belief, Plaintiffs' damage claims are barred in whole or part by reason of their failure to mitigate their alleged damages and/or the doctrine of after-acquired evidence; further, in the alternative, to the extent, Plaintiffs have mitigated their damages, Defendant is entitled to a credit or set-off.

## V.

## RESERVATION OF RIGHTS

13.      Defendant reserves the right to file an Amended Answer with the Court to plead any verified pleas, affirmative defenses and claims, crossclaims, or third-party claims, as applicable, after further investigation and discovery.

## VI.

## <u>JURY DEMAND</u>

14.     Defendant hereby requests and demands a jury trial.

## VII.

## <u>PRAYER</u>

15.     The above answer is respectfully submitted to the Court by the Defendant, who asks that Plaintiff take <u>nothing</u>, that the Defendant be allowed to recover the costs which have been incurred by reason of the charges and allegations by the Plaintiff against this Defendant, and that the Court give this Defendant such other and further relief from these charges as the Court may feel that this Defendant is entitled to.

## VIII.

## <u>DEFENDANT'S COUNTER COMPLAINT</u>

16.     Defendant/Third-Party Plaintiff Saddler (hereinafter "Third-Party-Plaintiff" or "Saddler") seeks declaratory relief from and against the Third-Party Defendants, Carvana, LLC (hereinafter "Carvana"), SilverRock Group, Inc. (hereinafter "SilverRock") and Drive Time Automotive Group, Inc. (hereinafter "Drive Time") (collectively, "Third-Party Defendants").

## IX.

## <u>PARTIES</u>

17.     Defendant/Third-Party Plaintiff Richard Saddler is an individual living and residing in the premises located at 413 Genoa Drive, Manchester, Missouri 63021.

18. Defendant/Third-Party Plaintiff Saddler seeks damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of court costs and fees.

19. Plaintiff, Bridgecrest Acceptance Corporation (hereinafter "Bridgecrest") is a foreign corporation organized and existing under the laws of the State of Arizona and duly licensed to do business in the State of Missouri.

20. Third-Party Defendant Carvana is a limited liability company organized under the laws of the State of Delaware and duly licensed to do business in the State of Missouri. Carvana has already made an appearance and filed an Answer with the Court.

21. Third-Party Defendant SilverRock is a corporation organized and existing under the laws of the State of Arizona and duly licensed to do business in the State of Missouri. SilverRock has already made an appearance and filed an Answer with the Court.

22. Third-Party Defendant Drive Time is a corporation organized and existing under the laws of the State of Arizona and duly licensed to do business in the State of Missouri.

23. Drive Time is the parent company and "spun off" Carvana, SilverRock, and Bridgecrest.

24. Drive Time is a private company that is owned by Ernest Garcia, II.

## VIII.

## JURISDICTION AND VENUE

25. All parties admit that venue is appropriate in this district.

26. Venue is proper in this District pursuant to Missouri Rules of Civil Procedure (Hereinafter "MRCP") on the grounds that a substantial part of the events or omissions giving rise to the third-party complaint occurred within Missouri.

## IX.

## PLAINTIFF'S ORIGINAL PETITION ON FILE

27.     There is currently on file with the United States District Court, Eastern District of Missouri, a Petition for Damages (hereinafter the "Petition") in Case No.: 21SL-CC01705, captioned *Bridgecrest Acceptance Corporation v. Richard Saddler.*  All allegations by the Plaintiff in the Petition are denied in their entirety for reference only and not to admit any allegations therein, all of which are denied.

## X.

## GENERAL INFORMATION

28.     Ernest Garcia, II was a player in the savings and loan crisis in the late 1980's and he pled guilty to felony charges of fraud in 1990; therefore, he is unable to be the CEO of a publicly traded corporation.

29.     Carvana was founded in 2012 by Ernest Garcia, III, Ryan Keeton and Ben Huston.  Carvana went public on or about April 28, 2017. Carvana's shares ended the day at $11.10.  On or about January 24, 2020, Carvana shares were $83.11 with their highest value being $99.19 in or about December 2019.

30.     Blomberg reported that Ernest Garcia, II's felony conviction was not disclosed in Carvana's Security and Exchange Commission filings according to an article in Forbes.

31.     The two largest shareholders of Carvana are Ernest Garcia, II and Ernest Garcia, III, who combined own a super majority of Carvana shares which provide them with controlling voting rights.

32.     On or about November 19, 2014, the Consumer Financial Protection Bureau (hereinafter "CFPB") took action against a "buy here, pay here" car dealer named Drive Time and fined them a civil money penalty of $8,000,000.00.  *See Exhibit A.*

33.     "The CFPB noted that 'at least 45 percent of Drive Time's auto installment contracts were delinquent at a given time'." *See Exhibit A.*

34.      Shortly thereafter Drive Time spun off its' loan servicing division andrenamed it Bridgecrest Acceptance Corporation in 2016.

35.     To Saddler's belief and knowledge Bridgecrest is a finance company that exclusively services auto loan debt for Drive Time and its affiliates.

36.     To Saddler's belief and knowledge Carvana is a retailer of used motor vehicles that are obtained, in part, by and through Drive Time.

37.     To Saddler's belief and knowledge SilverRock is a warranty company that is referred by Carvana to presumptive purchasers of used motor vehicles from Drive Time and/or Carvana.

38.     To Saddler's belief and knowledge, when a vehicle is purchased form Carvana, Carvana uses Bridgecrest to service the loans from Carvana's customers.

39.     To Saddler's belief and knowledge, when a vehicle is purchased from Carvana, Carvana uses SilverRock to service and/or administer all warranties and/or GAP insurance for Carvana's customers.

40.     Under the "umbrella" of the ownership and/or control of Drive Time, the purchase of a vehicle from Carvana by a consumer such as Saddler, is then financed through Bridgecrest and the warranties are provided by SilverRock.

41.     On April 15, 2021, Bridgecrest electronically filed a Petition in the Circuit Court of Saint Louis County, Missouri, Circuit Court Division in Case No. 21SL-CC01705 ("Petition").

42.     In the Petition, Bridgecrest alleged that Bridgecrest and Saddler entered into a written contract, without any proof of said contract.

43.     In an affidavit that was attached to the Petition, Bridgecrest swears that Bridgecrest is a third-party servicer of accounts originated by Drive Time.

44.     In response to Bridgecrest's filing, Saddler filed a Notice of Removal to the U.S. District Court. Bridgecrest filed a Motion to Remand that stated in part: "After this court compelled Saddler's claims to arbitration, Saddler failed to take any steps to institute arbitration proceedings as provided for in the relevant arbitration agreement, and, eventually, Bridgecrest instituted the action in Missouri State Court in proceeding styled *Bridgecrest Acceptance Corporation v. Saddler*, Case No. 21-SL-cc-01705, St. Louis County, Missouri Circuit Court on April 15 2021, seeking damages for Saddler's breach of the retail installment contract between Carvana and Saddler." As a footnote it states "Bridgecrest is often, although not always, the entity suing parties in default of Carvana's retail installment contracts."

45.     Saddler filed a prior suit against Carvana in the Circuit Court of Saint Louis, Missouri ….. Case No. 19SL-CC05679 which Carvana removed to this Court in Case No. 4:20CV105 HEA.

46.     In Case No. 4:20CV105 HEA, this Court issued an Order on August 11, 202 which granted Carvana's Motion to Compel Arbitration and Dismissed Case No. 4:20CV105 HEA.  Arbitration has just started.

47.    Since August 11, 2020, additional facts have become known to Saddler and are alleged herein.

## XI.

## STATEMENT OF THE FACTS

48.    Desiring to purchase a used vehicle, Saddler utilized Carvana's website to search for and locate a suitable vehicle.

49.    After locating a vehicle, Saddler applied for financing through Carvana's related party finance company, Bridgecrest.

50.    Bridgecrest approved Saddler to finance $26,489.02 which included the price of the vehicle, TAVT tax, license fee, vehicle protection and GAP coverage, at an interest rate of 12.61%.

51.    Vehicle protection and GAP coverage was administered by SilverRock at Carvana's direction and control.

52.    On or about September 21, 2018, Carvana delivered a 2015 GMC Terrain Denali ("Denali") the second of two automobiles to Saddler at his residence in St. Louis County, Missouri, and upon delivery Saddler executed final documents acknowledging and accepting delivery.

53.    These documents included a retail installment contract and security agreement, Carvana Care Agreement, credit reporting notice, odometer disclosure statement, and a GAP Addendum to retail installment contract.

54.    On the first page of the buyer's guide that was provided to Saddler at the time of purchase it states a service contract is available at an additional charge.  *See **Exhibit B***.

55. In the Gap Addendum to Retail Installment Contract, the creditor is listed as Carvana with a Tempe Arizona address. SilverRock is listed as the administrator of the GAP Addendum. *See **Exhibit C***.

56. In the Retail Installment Contract and Security Agreement, Carvana, LLC of Winder, Georgia is listed as the Seller. *See **Exhibit D***.

57. The Retail Installment Contract provides a security interest to Carvana, LLC of Winder, Georgia. *See **Exhibit D***.

58. Pursuant to the Retail Installment Contract, Carvana is both the Seller and the Lender for the vehicle purchased by Saddler.

59. Neither at the time of the sale or delivery of the purchased vehicle, nor any time subsequent did Carvana provide Saddler title or an assignment of a Certificate of Ownership to the purchase vehicle as required by Missouri law and/or Georgia law.

60. Approximately forty-five days after his purchase, and prior to the expiration of the temporary registration tags, Saddler was required to obtain at his expense and inconvenience the first of what would turn into several emissions inspections with odometer readings. Carvana told Saddler that he needed to take these actions and email the emissions test results to Carvana ostensibly so that Carvana could provide Saddler his vehicle title or an assignment of Certificate of Ownership and registered license plates. Carvana told Saddler that Carvana would cover the expense of obtaining his emissions test.

61. Saddler repeatedly requested that Carvana sign over said title, place Bridgecrest as lienholder.

62. Despite providing a passing emissions test result via FedEx and email as directed by Carvana, Saddler was informed that Carvana's processing company was unable

to process the title and registration and requested original emission inspection and odometer readings issued by the State of Missouri and not the "copy" provided by mail or email.

63.     Saddler repeatedly requested the title and registration for the vehicle he purchased.

64.     The Retail Installment Contract and Security Agreement required Saddler to pay a license and title fee.  *See **Exhibit D***.

65.     Saddler was making all required payments to Bridgecrest even though he was having ownership registration problems.

66.     In April of 2018, Saddler began receiving emails from Carvana and Bridgecrest threatening repossession of the vehicle Plaintiff purchased to cover up their behavior.  *See Exhibit E*.

67.     In April, Carvana began creating additional items unrelated to emissions; but, Saddler immediately complied.  *See **Exhibit F***.

68.     As a further consequence of Saddler's registration problems, he has been stopped repeatedly by police for driving without properly registered license plates.

69.     Beginning in approximately September of 2018 until approximately September of 2019, Saddler made all monthly payments to Bridgecrest of $527.00.

70.     On October 14, 2019, Saddler made a payment to Bridgecrest, which Bridgecrest stated made his account current. *See **Exhibit G***.  Saddler has in his possession the recorded call from Bridgecrest/Plaintiff.

71.     Saddler made his next payment to Bridgecrest on or before November 26, 2019, which was the due date for said payment.

72.     Bridgecrest refused to accept and returned all payments made after October 14, 2019 and continues to do so.

73.     SilverRock informed Saddler that they would no longer honor the service agreement because Carvana allegedly canceled the service agreement.

74.     Saddler has additionally suffered the loss of time, inconvenience, annoyance, and embarrassment resulting from his vehicle purchase and Carvana's failure to assign Saddler a Certificate of Ownership or title pursuant thereto and by Carvana's further and ongoing failure to remedy their omission of failing to assign him a Certificate of Ownership.

75.     Saddler has also incurred thousands of dollars in rental car expenses due to alleged conduct referenced herein.

76.     The allegations contained herein establish that Drive Time asserted control over Carvana, Bridgecrest, and SilverRock.

77.     The actions of Carvana, Bridgecrest, SilverRock, and Drive Time as described herein were outrageous because of their combined conscious disregard of their contractual and statutory obligations or otherwise reckless indifference to Saddler's rights.

78.     In the General Court of Justice Superior Court Division of Wake County, North Carolina, File No. 21-CVS-8116, Carvana entered into a settlement agreement where their retail license to sell automobiles in the State of North Carolina was suspended for 180 days, effective on August 2, 2021.  *See Exhibit H*.  This settlement agreement was in part due to Carvana's failure to timely deliver title work which is similar to the facts alleged above by Saddler.

79.     In addition, the following actions have taken place in the following state cases:

a) The State of Florida filed an administrative complaint, citing CARVANA'S Jacksonville location and CARVANA'S CEO, Earnest C. Garcia III, for failing to transfer titles within 30 days, as is required by Florida law. The administrative complaint named twelve Florida consumers who had been impacted by CARVANA'S failure to timely transfer titles and in September 2021, CARVANA was ordered to pay a $6000 fine for their actions.

b) In August 2021, CARVANA settled a lawsuit that had been filed in Los Angeles County, California and agreed to pay $850,000 for operating in California without a dealer's or transporter's license. District attorney's offices in San Diego, Santa Clara and Ventura counties joined in the lawsuit. CARVANA had been selling cars to California consumers since 2015 but did not obtain a dealer's license until May 2019; and beginning in September 2017, CARVANA delivered numerous cars to California customers using its own delivery vehicles, but had no transporter's license.

c) In May 2021, the State of Michigan fined CARVANA $2,500 for seven violations of state rules for vehicle dealers, including improperly issuing temporary registrations. CARVANA also agreed to an 18-month probation, during which the state can suspend or revoke the company's license to sell cars if it fails to comply with Michigan law.

d) In the case of ST. PAUL ELECTRICAL CONSTRUCTION PENSION PLAN et al v. ERNEST GARCIA III et al, filed in The Court of Chancery of the State of Delaware case number 2020-0415, (*Exhibit K*), Plaintiff's filed an action that

alleges Carvana's controlling stockholder's and directors have engaged in insider trading.

80.     Saddler has learned that at the time Caravan was not a registered auto dealer in the State of Missouri when they sold him the vehicle that is subject to Saddler's original suit against Carvana.

81.     The failure to be a registered auto dealer in Missouri violates Section MO Rules 301.559 of Missouri Statutes. *(Missouri Department of Revenue Exhibit L)* This is the same type of conduct that cost Carvana $850,000 in fines, penalties, and costs in the Los Angeles County, California lawsuit described above.

82.     As stated above, Drive Time is the parent company and "spun off" Carvana, SilverRock, and Bridgecrest, and Drive Time has had a dealership here in the state of Missouri for over ten (10) years. Carvana's conduct shows their sophistication and purposeful intent to disregard and violate Missouri law.

83.     Saddler and Carvana have entered into settlement negotiations regarding the issues initially set for Arbitration. However, Caravan has been stringing Saddler along during these negotiations. *(Motion to Vacate paragraph 29-49 Exhibit M)* Carvana then attempted to time bar Saddler from his Court ordered Arbitration *(Corporate Parties Remand filling Exhibit N)*

## COUNT I – BREACH OF CONTRACT
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

84.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

85.     On or about September 21, 2018, Saddler entered into a contract ("Contract") with Carvana for the purchase of a used vehicle.  *See (Exhibit I)*.  The Contract was executed in St. Louis County, Missouri.  The Contract names Carvana as "Dealer" for the sale of the subject vehicle.

86.     In addition, on or around September 21, 2018, Saddler entered into a Retail Installment Contract and Security Agreement ("Finance Agreement") with Bridgecrest for the financing of the Denali.  *See (Exhibit D)*.

87.     Further, on or around September 21, 2018, Saddler entered into a Warranty Agreement with SilverRock.  *See (Exhibit J)*.

88.     The Contract and Missouri State law R.S. Mo. § 301.210 required Carvana, among other things, to provide Saddler with title to the vehicle by assigning him a Certificate of Ownership upon performance by Carvana of his contractual obligations.

89.     Saddler was never provided a Certificate of Ownership by Carvana at the time of vehicle delivery as required by Missouri law and which is necessary to register his purchased vehicle and/or within the time period as required by laws of the State of Georgia.

90.     Saddler never received any evidence of proof of title to the Denali; therefore, Bridgecrest could not attach any security interest to the Denali.

91.     Saddler performed fully in accordance with the Contract paying Bridgecrest each and every payment in the correct amount as it became due and approx.. September 2019.

92.     Carvana's failure to provide Saddler documents necessary to register his purchased vehicle constitutes not only a breach of Contract itself; but, also a breach of the implied covenant of good faith and fair dealing imposed upon every contract in Missouri.

93.     Carvana's failure to provide Bridgecrest with any proof of ownership and/or title to the Denali requires the Finance Agreement and Warranty to have no legal effect.

94.     As a result of the foregoing breaches of Contract, all Defendants have caused Saddler to suffer financial damages.

95.     Accordingly, Saddler is entitled to an award of compensatory damaged in an amount to be determined at trial, as well as an award of punitive damages and attorney's fees, costs, and pre- and post-judgment interest.

**COUNT II – STATUTORY FRAUD**
**AS TO CARVANA**

96.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

97.     R.S. Mo. § 301.210 provides any sale of a motor vehicle without transfer of title is fraudulent.

98.     Carvana sold, or purportedly sold, a vehicle to Saddler without transferring title of the vehicle by assignment of a Certificate of Ownership as required by Missouri statute R.S. Mo. § 301.210, and as such, the sale was fraudulent and void as a matter of law.

99.     Carvana was repeatedly put on notice by Saddler, in addition to being notified by the Missouri State Attorney General, of the fraudulent nature of the vehicle sale.

100.    Despite being aware of their failure to transfer title by assignment of a Certificate of Ownership and by thereafter refusing to remedy same, Carvana has caused Saddler to suffer financial damages.

101.    Accordingly, Saddler is entitled to an award of compensatory damaged in an amount to be determined at trial, as well as an award of punitive damages and attorney's fees, costs, and pre- and post-judgment interest.

## COUNT III – FEDERAL FRAUD IN THE INDUCEMENT RULE 9(b)
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

102.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

103.    Carvana, and/or Bridgecrest, and/or SilverRock made fraudulent statements to Saddler during the course of negotiations for the Denali that Saddler would obtain title to the Denali and that the Denali would be financed and covered by specific warranties.

104.    These statements by Carvana, and/or Bridgecrest, and/or SilverRock were fraudulent because at the time made, Carvana, and/or Bridgecrest, and/or SilverRock knew that Carvana did not have the title to the Denali at the time of sale.

## COUNT IV – CIVIL REMEDIES, ATTORNEY'S FEES AND PUNITIVE DAMAGES
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MMPA") –
## R.S. Mo. §§ 407.020 and 407.025
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

105.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

106.    As herein alleged Carvana used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and/or the concealment, suppression, or omissions of material fact in connection with the sale of the Denali to Saddler, to wit: Carvana misrepresented to Saddler that Carvana was prepared to assign a Certificate of Ownership upon Saddler's performance under the Contract; Carvana misrepresented to Saddler that Carvana would obtain an ownership interest in the Denali if he performed as required under the contract; but, despite Plaintiff's performance he has acquired no interests whatsoever in the Denali; and Carvana, and/or Bridgecrest, and/or SilverRock charged Saddler excessive fees for services and products of little or no value.

107.    Saddler's purchase of the Denali from Carvana was made primarily for personal, family or household purposes.

108.    Saddler purchased the Denali for personal, family or household purposes and suffered an ascertainable loss of money or property as a result of the use or employment by Carvana of methods, acts or practices declared unlawful by R.S. MO § 407.020.

109.    Saddler has been damaged by Carvana, and/or Bridgecrest, and/or SilverRock's actions in an amount to be proven at trial for which he claims compensatory damages against Defendants.

110.    Carvana, and/or Bridgecrest, and/or SilverRock's conduct was malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard of Saddler's rights.

111.    Saddler is entitled to an award of punitive damages in an amount no less than $2,500.00 and reasonable attorney fees and expenses of this litigation, and interest against Carvana, and/or Bridgecrest, and/or SilverRock.

### COUNT V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

112.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

113.    Carvana represented to Saddler they were able to legally sell the Denali to Saddler.

114.    Despite Saddler performing as required under the Contract, Carvana failed to perform as required by law and as set forth *supra* by delivering the Denali without providing Saddler an assignment of a Certificate of Ownership.

115.    Carvana is a sophisticated and experienced nationwide and also a licensed Missouri auto dealership with resources enabling it to be fully knowledgeable regarding their responsibility to assign a Certificate of Ownership at the time of delivery in Missouri of an automobile sold.

116.    This is especially true due to Carvana being a subsidiary of Drive Time.

117.    Despite Carvana's knowledge as imputed by and through Drive Time, of their legal duty to assign ownership at the time of deliver, Carvana shifted its statutory burden to provide and assignment of ownership to Saddler by requiring him to obtain his own emissions certification prior to Carvana assigning Saddler his Certificate of Ownership.

118.    As a result of Carvana shifting its statutory responsibility to Saddler by failing to assign a Certificate of Ownership and thereafter insisting Saddler obtain his own emissions certification prior to Carvana's assignment, Saddler has been denied the benefit of his bargained for exchange as represented by the parties' contract because he has no ownership interest in the Denali after more than a year of monthly payments.

119.    As a direct result of Carvana's breach of the covenant of good faith and fair dealing, Saddler has, or will, sustain damages in an amount to be proven at trial.

## COUNT VI – CONSTRUCTIVE FRAUD OR NEGLIGENT MISREPRESENTATION AS TO CARVANA

120.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

121.    Carvana in the course of their business as a Missouri licensed used auto dealership, for Carvana's pecuniary gain, supplied false information to Saddler intended for their specific guidance in their consideration of the purchase of the Denali ass as herein

alleged, upon which Saddler reasonably relied to his detriment in entering into the purchase of the Denali.

122.     In furnishing such false information Carvana failed to exercise reasonable care or competence in obtaining or communicating such information to Saddler.

123.     As a direst and proximate result of Carvana's negligent misrepresentations, Saddler has suffered, and will continue to suffer damages, including pecuniary losses in an amount to be determined at trial.

124.     Saddler has been damages by Carvana's actions for which he claims compensatory damages against Carvana.

## COUNT VII – UNJUST ENRICHMENT
## AS TO CARVANA, BRIDGECREST AND SILVERROCK

125.     Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

126.     Carvana, and/or Bridgecrest, and/or SilverRock have knowingly benefited at Plaintiff's expense by reason of their receipt of monthly payments with interest and fees made toward the purchase price for the Denali.

127.     Allowing Carvana, and/or Bridgecrest, and/or SilverRock to retain such benefit without assignment to Saddler of a Certificate of Ownership and a judgment for his damages would be unjust under the circumstances.

128.     Carvana, and/or Bridgecrest, and/or SilverRock's conduct was malicious, fraudulent, oppressive and/or recklessly committed with wanton disregard of Saddler's rights.

129.     Saddler has been damages by Carvana, and/or Bridgecrest, and/or SilverRock's actions in an amount to be proven at trial and he hereby tenders the return of

the Denali for which he claims compensatory and punitive damages against Carvana, and/or Bridgecrest, and/or SilverRock.

### COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DRIVE TIME, CARVANA, BRIDGECREST AND SILVERROCK

130.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

131.    Carvana, and/or Bridgecrest, and/or SilverRock's actions were the direct and proximate cause of emotional distress suffered by Saddler.

132.    Carvana, and/or Bridgecrest, and/or SilverRock had a duty to avoid engaging in conduct and/or actions and/or omissions that would unnecessarily and unjustifiably cause emotional stress to Saddler.

133.    Carvana, and/or Bridgecrest, and/or SilverRock breached their duty.

134.    Carvana, and/or Bridgecrest, and/or SilverRock was negligent in causing Saddler's emotional distress in that Carvana, and/or Bridgecrest, and/or SilverRock realized or should have realized with the foresight exercised by a reasonable person that their conduct and/or actions and/or omissions involved an unreasonable risk of causing Saddler emotional distress.

135.    Furthermore, the actions of Carvana, and/or Bridgecrest, and/or SilverRock are outrageous and evidence a complete indifference and conscious disregard for the rights of others, Saddler is entitled to punitive damages.

### COUNT IX – ABUSE OF PROCESS AS TO BRIDGECREST

136.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

137.    Bridgecrest made an illegal, improper, perverted use of process, a use neither warranted or authorized by the process.

138.    Bridgecrest had an illegal purpose in exercising such illegal, perverted or improper use of process.

139.    As stated above, Bridgecrest's statement that "After this court compelled Saddler's claims to arbitration, Saddler failed to take any steps to institute arbitration proceedings as provided for in the relevant arbitration agreement, and, eventually, Bridgecrest instituted the action in Missouri State Court in proceeding styled *Bridgecrest Acceptance Corporation v. Saddler* . . . on April 15 2021, seeking damages for Saddler's breach of the retail installment contract between Carvana and Saddler."

140.    Bridgecrest filed this case against Saddler even though they had no contractual relationship with Saddler.

141.    It is apparent from Bridgecrest's statement, they filed this because of arbitration issues related to Carvana and Saddler.

142.    In so doing, Saddler suffered damages.

### COUNT X – MALICIOUS PROSECUTION
### AS TO CARVANA AND BRIDGECREST

143.    Saddler hereby incorporates by reference the foregoing allegations of this complaint as if set forth fully herein.

144.    Saddler had previously commenced a suit against Carvana.

145.    This suit was caused by Carvana's failure to provide him with a title to the Denali despite repeated requests and demands.

146.    This Court ordered the parties to mediation and dismissed Saddler's suit.

147.    The sole reason that Bridgecrest filed the suit against Saddler was due to arbitration issues between Saddler and Carvana.

148.    Bridgecrest exhibited malice in initiating the suit against Saddler.

149.    In the suit, Bridgecrest sought damages for Saddler's breach of the retail installment contract between Carvana and Saddler – not for a breach of a contract between Bridgecrest and Saddler.

150.    Saddler sustained damages as a result of the suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.    for the first count for Breach of Contract, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract, requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages; or

b.    for the second count for Statutory Fraud, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a" or "b";

c.    for the third count for Federal Fraud, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership; or in lieu of "a" or "b" or "c";

d.    for the fourth count for Violation of the MPA, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a", "b", "c", or "d";

e. for the fifth count for Breach of the Covenant of Good Faith and Fair Dealing, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a", "b", "c", "d", or "e";

f. for the sixth count for Constructive Fraud/Negligent Misrepresentation, an award of compensatory damages and punitive damages in an amount to be determined at trial and an Order for specific performance of the Contract requiring Defendant assign to Plaintiff a Certificate of Ownership or in the alternative rescission of the contract and an award of damages, or in lieu of "a", "b", "c", "d", "e"; or "f";

g. for the seventh count for Unjust Enrichment, an award of compensatory damages in an amount of at least $75,000.00 as determined at trial, and

h. for the eighth count for Negligent Infliction of Emotional Distress, an award of compensatory damages and punitive damages in an amount to be determined at trial, and

i. for the ninth count for Abuse of Process, an award of compensatory damages and punitive damages in an amount to be determined at trial, and

j. for the tenth count for Malicious Prosecution, an award of compensatory damages and punitive damages in an amount to be determined at trial, and

k. an award of costs, attorney's fees, and pre- and post-judgment interest, and

l. all other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendant/Third-Party Plaintiff requests a jury trial.

Respectfully submitted,

Richard Saddler, *Pro Se*
413 Genoa Drive
Manchester, Missouri 63021
Telephone: (310) 428-2110
Email: richardsaddler@yahoo.com

**DEFENDANT/THIRD-PARTY PLAINTIFF'S EX-PARTE MOTION FOR LEAVE TO AMMEND ORIGINAL ANSWER AND COUNTER-COMPLAINT AND MEMORANDUM – Page 24**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via Process Server and or emailed, and/or certified US Postal Service to the registered agents or Representatives listed below on this 15th day of November 2021, to the following:

**William A. Brasher**
Boyle Brasher LLC
1010 Market Street, Ste. 950
St. Louis, MO 63104

**M. Thomas McFarland**
Gullett Sanford Robinson & Martin PLLC
150 Third Avenue South, Ste. 1700
Nashville, TN 37201

**Mr. Scott Rabin, Esq.**
15280 Metcalf Avenue
Overland Park, Kansas 66223

*Attorney for Third-Party Defendants*
*Carvana, LLC*
*SilverRock Group, Inc.*
*Drive Time Automotive Group, Inc.*

**Richard Saddler, *Pro Se***