Richard Saddler, *Pro Se* Plaintiff
413 Genoa Drive
Manchester, MO 63021
(310) 428 - 2110

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD SADDLER,** | Case No. 4:21-cv-01096-JCH |
| Plaintiff, | |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT |
| CARVANA, LLC, | OF MOTION TO VACATE |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

COMES NOW, Plaintiff, Richard Saddler, pro se, and files this Memorandum of Points and Authorities in support of a Motion to Vacate pursuant to F.R.Civ.P. 60.

**INTRODUCTION**

F.R.Civ.P. 60 (b) (6) allows the Court to vacate a judgment for any other reason that justifies relief. Rule 60 (d) provides, "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) (not applicable here); or (3) set aside a judgment for fraud

1

on the court." In addition, Rule 60 allows a Court to vacate a judgment on its' own motion.

Saddler is requesting that he moves the Court for its Order granting him relief from an Order dated August 11, 2020, Doc. No 7 (4:20CV105-HEA). The Order required that the parties arbitrate, and it dismissed Saddler's complaint.

Saddler will establish that even after this Court ordered the parties to arbitrate, Saddler was sued in Case No. 21SL-CC01705 from The Circuit Court of Saint Louis County, Missouri by Bridgecrest Acceptance Corporation based upon the same facts and circumstances that were part and parcel of Saddler complaint in the instant matter.

Saddler will further prove to this Court that the same individuals and entities control Carvana and Bridgecrest and thus are one and the same. Saddler has set forth below facts from an insider trading complaint that has been filed against Carvana's controlling stock owners Ernest Garcia II and Ernest Garcia III. Carvana's directors include Former Vice President Dan Quayle, Michael Maroone, Neha Parikh, Ira Platt, and Gregory Sullivan.

As stated in Saddler's complaint in this matter, on or about September 21, 2018, Carvana delivered to Saddler at his residence a 2015 GMC Terrain Denali. However, to this date (over three years later), Carvana has failed to provide a certificate of title to this vehicle to Saddler.

2

In addition, this Court will learn that at least five (5) different states have taken legal action against Carvana for the same conduct that Saddler alleged in his complaint in the instant matter.

The facts presented herein establish that this Court should vacate the August 11, 2020 Order on the Court's own motion and the legal arguments contained herein.

## STATEMENT OF FACTS

1. As stated in Saddler's complaint in this matter, on or about September 21, 2018, Carvana delivered to Saddler at his residence a 2015 GMC Terrain Denali

2. Since Saddler filed his cause of action against CARVANA on or about December 23, 2019, and this Court entered a dismissal on or about August 11, 2020; Saddler has been sued in the Circuit Court of Saint Louis County, Missouri Case No. 21SL-CC01705 by BRIDGECREST ACCEPTANCE CORPORATION, ("BRIDGECREST") an Arizona Corporation which was filed on or about April 15, 2021. *(Exhibit 1)*

3. Paragraph 2 of *Exhibit 1* alleges that "(Bridgecrest) and (Richard Saddler) entered into a written contract." This paragraph also states that a copy of the written contract is attached as Exhibit A (which comprises pages 3 through 9 of *Exhibit 1here in*).

4. This alleged "written contract" is only signed by Richard Saddler and Carvana. It is the retail installment agreement for the purchase of the vehicle that is the basis of the complaint that Saddler filed in the instant matter.

5. Pages 8 to 9 of Exhibit 1 are an Affidavit ("Affidavit") that swears that Bridgecrest is a "third party servicer of accounts originated by DriveTime Car Sales Company LLC." Nowhere in said Affidavit is Carvana mentioned. *(See Exhibit 1, pages 8 to 9)*

6. Carvana forced arbitration on a retail installment contract of which they did not own, as stated in the affidavit of Bridgecrest *(Exhibit 1 page 8, number 5)* "The books and the records Plaintiff show that Defendant entered into a Retail Installment Contract with DriveTime…."  Carvana was disingenuous with the Court knowing that Carvana was never the owner of the retail installment contract, yet represented that to the Court.  This very conduct shows the true relationship between the corporate parties and how they comingle several facets of their businesses.

7. DRIVETIME AUTOMOTIVE GROUP INC ("Drive Time") is the parent company and has spun off CARVANA, SILVER ROCK, and BRIDGECREST. DriveTime is a private company owned by Ernest Garcia II, who also has total control of all entities mentioned here in #7.

8. In the case of ST. PAUL ELECTRICAL CONSTRUCTION PENSION PLAN et al. v. ERNEST GARCIA III et al., filed in The Court of Chancery of the State of Delaware case number 220-0415, (*Exhibit 2* the hierarchy of the corporations that are related Drive Time and CARVANA is fully set forth as follows:

9. "Carvana is controlled by the Garcia family. Its CEO, Chairman, and President, Ernest Garcia III ("Garcia III"), is the son of used car mogul Ernest Garcia II ("Garcia II"), an ex-felon who amassed a fortune by selling cars and financing packages to individuals with poor credit. Garcia II and Garcia III control more than 92% of Carvana's voting power." *(Exhibit 2, para. 3)*

10. "Defendant Ernest C. Garcia III ("Garcia III") is the Company's founder and CEO. Garcia III has been Carvana's CEO and the Chairman of its Board since the Company's inception. Before launching Carvana, Garcia III worked for his father's company, DriveTime Automotive Group Inc. ("DriveTime"), as a Treasurer, VP and Director-Quantitative Analytics. Before the stock offering that is the subject of this suit, Garcia III held 11,9521 Class A shares and 3,664,526 Class B shares; assuming all of his LLC units in Carvana's subsidiary were exchanged for Class A shares, Garcia III would have held about 10% of the Class A shares at the time of

5

the offering. Together with Garcia II and their trusts, Garcia III controlled 93% of the voting power of the Company at the time of the stock offering that is the subject of this suit." *(Exhibit 2, para. 11)*

11. "Defendant Ernest C. Garcia II ("Garcia II") is Garcia III's father. Like his son, Garcia II is a billionaire used car businessman. As of April 1, 2020, Garcia II beneficially owned 57.4% of Carvana's Class A shares.2 He holds 52,937,458 Class B shares. Garcia II also owns 66,171,823 Class A Units in Carvana Group (defined below). With his son and the trusts they control, Garcia II controlled 93% of the voting power of the Company at the time of the stock offering that is the subject of this suit." *(Exhibit 2, para. 12)*

12. "Defendant Ernest Garcia III Multi-Generational Trust III is a trust over which Garcia II has sole investment and depository power. Garcia III and his children are the sole beneficiaries of the Multigenerational Trust. The Multigenerational Trust beneficially owns 100,000 Class A shares and 11,952,000 Class B shares as of April 1, 2020. It also holds 14,940,000 Class A Units in Carvana Group." *(Exhibit 2, para. 13)*

13. "Defendant Ernest Irrevocable 2004 Trust III ("2004 Trust") is a trust over which Garcia II has investment and depository power. Garcia III is the sole beneficiary of the 2004 Trust. The 2004 Trust beneficially owns 11,834,021

Class B shares. It holds 14,792,526 Class A Units in Carvana Group." *(Exhibit 2, para. 14)*

14. "Defendant ECG II SPE, LLC ("SPE"), an Arizona entity, is a limited liability company that is wholly owned and controlled by Garcia II. SPE holds 8,000,000 Class B shares, as well as 10,000,000 Class A Units in Carvana Group (defined below), for which Garcia II is the beneficial owner." *(Exhibit 2, para. 15)*

15. "Defendant Verde Investments, Inc. ("Verde"), an Arizona corporation, is an affiliate of DriveTime. Verde is wholly owned and controlled by Garcia II, who is its sole shareholder and director. Garcia II participated in the Private Offering 8 (defined below) through Verde. Verde purchased 555,556 shares in the Private Offering; Garcia II is the beneficial owner of these shares." *(Exhibit 2, para. 16)*

16. Carvana's directors include Former Vice President Dan Quayle, Michael Maroone, Neha Parikh, Ira Platt, and Gregory Sullivan. *(Exhibit 2, paras. 18 to 22)*

17. "After his own firm went bankrupt and he served three years on probation, Garcia II formed "Ugly Duckling." Ugly Duckling sold and financed used cars for sub-prime purchasers with poor credit histories." *(Exhibit 2, para. 25)*

7

18. In March 2001, Ugly Duckling stockholders filed a derivative action against Garcia II and the company's other directors challenging these and other improper transactions. Director Defendant Sullivan was on the Ugly Duckling board at the time and was also sued for fiduciary breaches." ***(Exhibit 2, para. 26)***

19. "In 2002, Garcia and Sullivan took Ugly Duckling private and renamed it DriveTime. Garcia II filled the DriveTime board with his friends, including Platt, who would later be awarded a seat on the Carvana board." ***(Exhibit 2, para. 28)***

20. "Ten years later, in 2012, the Garcias created Carvana as an LLC subsidiary of DriveTime. On November 1, 2014, DriveTime spun Carvana off as a separate company. On November 29, 2016, Carvana was incorporated as a Delaware company; in April 2017, it went public, with its Class A shares trading on the NYSE at the price of $15 per share." ***(Exhibit 2, para. 29)***

21. In addition, the following similar actions have taken place in the following state cases:

    **1)** The North Carolina Department of Motor Vehicles (NCDMV) sued CARVANA, claiming that CARVANA failed to deliver titles to the department, sold a motor vehicle without a state inspection, and issued out-of-state temporary tags/plates for a vehicle sold to a person in

North Carolina. On August 2, 2021, NCDMV and CARVANA agreed to a settlement whereby CARVANA'S North Carolina Dealer's License was revoked for a period of 180 days, meaning that CARVANA was prohibited from selling vehicles in North Carolina until January 29, 2021.

**2)** The State of Florida filed an administrative complaint, citing CARVANA'S Jacksonville location and CARVANA'S CEO, Earnest C. Garcia III, for failing to transfer titles within 30 days, as Florida law requires. The administrative complaint named twelve Florida consumers who had been impacted by CARVANA'S failure to timely transfer titles. In September 2021, CARVANA was ordered to pay a $6,000 fine for their actions.

**3)** The State of California, in August 2021, CARVANA settled a lawsuit that had been filed in Los Angeles County, California, and agreed to pay a fine of $850,000 for operating in California without a dealer's or transporter's license. District attorney's offices in San Diego, Santa Clara, and Ventura counties joined in the lawsuit. CARVANA had been selling cars to California consumers since 2015 but did not obtain a dealer's license until May 2019.  Beginning in September 2017, CARVANA delivered numerous cars to California

customers using its own delivery vehicles but had no transporter's license.

**4)** The State of Michigan, in May 2021, fined CARVANA $2,500 for seven violations of state rules for vehicle dealers, including improperly issuing temporary registrations. CARVANA also agreed to 18-month probation, during which the state can suspend or revoke the company's license to sell cars if it fails to comply with Michigan law.

**5)** The State of Texas fined Carvana in approximately October 2021 for over $10,000 regarding titling and other documentation issues.

## ARGUMENT

**A.) Rule 60 (d) provides, "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding; (2) (not applicable here); or (3) set aside a judgment for fraud on the court."**

22. "[in] order to set aside a judgment or order because of fraud upon the court under Rule 60(b) . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *England v. Doyle,* 281 F.2d 304, 309 (9th Cir. 1960). See

also *United States v. Standard Oil Co. of Calif.,* 73 FRD. 612, 615 (N.D.Cal.1977).

23. On or about September 21, 2018, Carvana delivered to Saddler at his residence a 2015 GMC Terrain Denali, and to date, Carvana has failed and/or refused to deliver the certificate of title to said vehicle.

24. Carvana knowingly represented they entered into the retail installment contract with Saddler.  Facts supported by Bridgecrest show that DriveTime entered into the retail installment contract with Saddler *(Exhibit 1, page 8, number 5)*.

25. In approximately April 2019, Carvana was approved and issued another Missouri Auto Dealer Licence. However, the Missouri Department of Revenue, which oversees auto dealers, confirms that Carvana sold cars in Missouri without a Dealer license *(Exhibit 3)*.

26. This conduct violates Missouri State law R.S. Mo. § 301.570 at minimum.

27. As stated above in paragraph 23, subsequent to this Court's August 11, 2020 Order, Saddler suggests that this is Carvana's standard operating procedure.

28. Through their vast financial means, Carvana was able to have their legal counsel convince this Court to order arbitration against a pro se litigant for

the same course of conduct that the different US States have been able to rectify using their administrative powers.

29. In the instant matter, Carvana's conduct in forcing arbitration, but their failure and/or refusal to allow arbitration to move forward is egregious and establishes that Carvana has intentionally perpetrated a fraud on this Court as well as the Circuit Court of Saint Louis County, Missouri.

30. Additionally, Carvana attempted to make Saddler believe that a settlement was close, and therefore Saddler agreed to a settlement instead of arbitration at the request of Defendant.

31. Carvana's settlement attempts consisted of several visit's by employees from Carvana and Bridgecrest to Saddler's residence, with promises of giving Saddler his car free and clear of any liens, along with a cash settlement from September 2020 to early April 2021.

32. On approximately April 28, 2021, Saddler received a call from an attorney he had spoken with about representing him against Carvana.

33. After disclosing everything with regards to settlement offers made by Carvana/Bridgecrest. The attorney reveals that Bridgecrest/Carvana has tricked Saddler and has filed a suit against Saddler in St. Louis County Courts.

34. The attorney states you need representation immediately. The attorney sent Saddler a retainer agreement along with a copy of the Bridgecrest Petition *(Exhibit 4 names redacted)*. So attorney-client privilege is protected, Saddler requests an in-camera inspection of email if needed by Court.

35. Saddler received the Bridgcrest lawsuit from this attorney exclusively.

36. Carvana's conduct may have been done with intent to time-bar Plaintiff/Saddler from arbitration with its disingenuous negotiations.

37. Less than a week after discovering the Bridgcrest lawsuit, Saddler immediately began the process and filed with JAMS *(Exhibit 5)*.

38. Saddler sent an email to opposing Counsel, Mr. McFarland, on 10/10/21, asking if they would agree that most settlement conversations that transpired shouldn't be protected by rule 408. He disagreed.

39. Saddler's position is that the conversations that happened before the initiation of the current arbitration case should not be protected by rule 408 *(referenced in #31 above)*.

40. Saddler can support his position that the Defendant and all related companies, associated with the Motion to Remand case (4:21-cv-01096-JCH), and their egregious conduct can be proven if the Court orders all 408 communication submitted for its review.

## B.) F.R.Civ.P. 60 (b) (6) allows the Court to vacate a judgment for any other reason that justifies relief.

41. Defendant and all related corporate parties, as mentioned in the case of Motion to Remand case, intentionally misled the Court.

42. In the Corporate parties' Remand filling *(Exhibit 6)*, they state on page 2, "Saddler was served with Bridgcrest's Petition in the Circuit Court on May 20, 2021…."

43. Bridgcrest never served Saddler.

44. Saddler was served with Tanzeela Khan's petition *(Exhibit 7)*.

45. Even though Saddler was aware and anticipating the service of Bridgecrest's petition as mentioned above. Bridgecrest knew before they filed the motion to remand that service to Saddler was not done, but yet still, as of today, they have not withdrawn that known false statement.

46. It was disclosed by phone to Bridgcest's counsel Daniel Rabin of law firm Berman & Rabin's staff multiple times before September 1, 2021, that Saddler was served with the wrong petition.

47. In our initial arbitration hearing on August 26, 2021, Saddler also disclosed to current opposing counsel Mr. McFarland for corporate parties and Judge Lawrence Mooney, our Arbitrator. A special process server served the wrong petition to Saddler *(Exhibit 7)*.

48. For Bridgecrest to knowingly mislead the Court is undoubtedly sanctionable conduct by the Corporate Parties and Counsel.

49. **The same reasons as stated above constitute "any other reason that justifies relief:" Per Rule 60.**

50. This is an additional reason why this Court should grant this motion.

**C.) Rule 60 allows a Court to vacate a judgment on its' own motion.**

51. Should this Court determine that Saddler's motion is untimely, then this Court has the discretion and inherent authority to grant this motion to vacate.

52. "Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the Court. See *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.,* 322 U. S. 238 (1944); *Universal Oil Products Co.* v. *Root Refining Co.,* 328 U. S. 575, 580 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas,* 322 U. S., at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner. . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.,* at 246. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the

15

victim of fraud. *Universal Oil, supra,* at 580." *Chambers v. Nasco, Inc.*, 501 US 32, 44 (1991)

## CONCLUSION

The integrity of our Judicial system is a stake. This Court has the Constitutional authority to vacate the arbitration order of its own volition. Carvana and all Corporate Parties have intentionally, willfully, and continuously violated state laws in Missouri and across the country. The Court should take into consideration the sophistication of Carvana and all Corporate parties' knowledge regarding state rules and regulations of automobile sales in Missouri and the non-sophistication of all of the victims affected by Carvana and all Corporate parties. In granting this motion, it would make the Corporate Parties Motion To Remand moot. Based on Carvana's conduct, there is a high probability that this Court may issue a referral to the Justice department because of this case and others similarly situated. For all reasons, as well as those outlined in support of Saddler's motion, the judgment, in this case, should be vacated.

Respectfully submitted,

**Richard Saddler,** *Pro Se*
413 Genoa Drive
Manchester, Missouri 63021
Telephone: (310) 428-2110
Email: richardsaddler@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via email to attorneys for Corporate Parties and Representatives listed below on this 15th day of November 2021, to the following:

**William A. Brasher**
Boyle Brasher LLC
1010 Market Street, Ste. 950
St. Louis, MO 63104

**M. Thomas McFarland**
Gullett Sanford Robinson & Martin PLLC
150 Third Avenue South, Ste. 1700
Nashville, TN 37201

**Mr. Scott Rabin, Esq.**
15280 Metcalf Avenue
Overland Park, Kansas 66223

*Attorney for Third-Party Defendants*
*Carvana, LLC*
*SilverRock Group, Inc.*
*Drive Time Automotive Group, Inc.*

**Richard Saddler,** *Pro Se*